UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Cindy Bunker**

      **v.**                               Civil No. 14-cv-274-PB
                                            Opinion No. 2014 DNH 167

**Midstate Mutual Insurance
Company, et al.**

**MEMORANDUM AND ORDER**

Cindy Bunker was injured at a Nashua, New Hampshire rental property owned by Brian Nadeau, a New Hampshire resident.  She brought a negligence action against Nadeau in New Hampshire Superior Court and later filed a separate insurance coverage action in state court against Nadeau and his insurer, Midstate Mutual Insurance Company, a New York corporation.  Midstate removed the insurance coverage action to this court, and Nadeau has since filed a cross-claim to join Bunker in seeking a declaratory judgment that the Midstate policy covers Bunker's injuries.  Midstate now files motions to dismiss against both Bunker and Nadeau for, among other things, lack of personal jurisdiction.

## I.  BACKGROUND

The present dispute arises from an insurance policy that

Nadeau bought from Midstate through an independent New York
agent.  The policy ran from January 9, 2013 until January 9,
2014.  Nadeau and his wife are the named insureds on the policy,
which lists their New Hampshire address and telephone number.
Midstate mailed the policy, along with periodic bills and
renewal applications, to Nadeau at his New Hampshire address.
Nadeau sent payments from New Hampshire to Midstate's offices in
New York.

The policy insures against bodily injury and property
damage at the "Described Location(s)" of three rental properties
in Fulton, New York.  The policy also includes a number of forms
and endorsements, including Form LS-5, which adds "Business
General Liability Insurance."  Business General Liability
Insurance provides "added coverages . . . in return for payment
of the premium."  The "added coverages" include "bodily injury
and/or property damage coverage" for any "occurrence" that takes
place "in the coverage territory during the policy period."  An
"occurrence" is defined as an accident, "business" is defined to
include "the rental of property," and the "coverage territory"
is "the United States of America, including its territories and
possessions, Puerto Rico and Canada."  Doc. No. 24.

Bunker was seriously injured when she fell down a flight of
stairs at a rental property owned by Nadeau in Nashua, New

Hampshire in August 2013.  On October 4, 2013, she filed a
negligence action against Nadeau in New Hampshire Superior
Court.  She filed the present action after Midstate denied her
claim for coverage.

## II.  <u>STANDARD OF REVIEW</u>

When a defendant contests personal jurisdiction, the
plaintiff bears the burden of demonstrating a basis for
jurisdiction.  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591
F.3d 1, 8 (1st Cir. 2009).  Because I have not held a hearing on
the motion, Bunker must only make a prima facie showing that
this court has personal jurisdiction.  See Cossaboon v. Me. Med.
Ctr., 600 F.3d 25, 31 (1st Cir. 2010).  A prima facie showing
requires the plaintiff to "proffer[] evidence which, if
credited, is sufficient to support findings of all facts
essential to personal jurisdiction." Lechoslaw v. Bank of Am.,
N.A., 618 F.3d 49, 54 (1st Cir. 2010) (internal quotation marks
omitted); see also Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26
(1st Cir. 2008) (a plaintiff asserting jurisdiction cannot rest
upon the pleadings but is "obliged to adduce evidence of
specific facts").  I consider Bunker's allegations to the extent
they are supported by evidence of specific facts set forth in
the record; I consider evidence offered by Midstate "to the

extent that [it is] uncontradicted."  See Cossaboon, 600 F.3d at
31 (internal quotation marks omitted).  I construe the evidence
"in the light most congenial to the plaintiff's jurisdictional
claim," Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008), but
I will not "credit conclusory allegations or draw farfetched
inferences."  Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d
19, 23 (1st Cir. 2007).


### III.  ANALYSIS

A court's personal jurisdiction over a defendant residing
outside the forum state ordinarily depends on whether both the
requirements of the forum state's long-arm statute and the due
process requirements of the U.S. Constitution are satisfied.
Cossaboon, 600 F.3d at 29 n.1.  New Hampshire's long-arm statue
permits the exercise of personal jurisdiction over a defendant
to the extent allowed by the Constitution's due process clause.
Hemenway v. Hemenway, 159 N.H. 680, 685 (2010).  Due process
requires that the defendant have "sufficient minimum contacts
with the state, such that maintenance of the suit does not
offend traditional notions of fair play and substantial
justice."  Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007)
(internal quotation marks omitted) (citing Int'l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945)).

4

Bunker[1] alleges that this court has specific jurisdiction over Midstate.  Specific jurisdiction "may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Cossaboon, 600 F.3d at 31.  I consider three factors – relatedness, purposeful availment, and reasonableness – to determine whether a defendant had sufficient "minimum contacts" with the forum state to support the exercise of specific personal jurisdiction. Adelson, 510 F.3d at 49.

The mere existence of a contractual relationship with a party from the forum state is insufficient to permit the exercise of specific jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985).  Rather, courts engage in a "contract-plus" analysis in which the contract is seen as an intermediate step in an ongoing process. Id. at 479.  For both the relatedness and purposeful availment inquiries, this analysis includes an evaluation of the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Id.; accord Bluetarp Fin., Inc. v. Matrix Constr. Co., Inc., 709 F.3d 72, 80 (1st Cir. 2013); see also Adams v.

---

[1] For the sake of convenience, I note that my references to Bunker apply equally to Nadeau's cross-claim.

Adams, 601 F.3d 1, 7 n.10 (1st Cir. 2010) ("[T]he defendant's contacts are central to each [factor] of the tripartite analysis.").  The contacts need not be extensive: a non-resident "need have only one contact with the forum, so long as the contact is meaningful." Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994) (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)) ("'[M]inimum contacts' is not necessarily a numbers game; a single contract can fill the bill.").  I consider each of the three specific jurisdiction factors with these standards in mind.

### A.   Relatedness

The relatedness inquiry requires that the "underlying claim 'arise out of' or be 'related to' the activities within the forum state." Adelson, 510 F.3d at 49.  It is a "flexible, relaxed standard which focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Id. (internal citations and quotation marks omitted).  Midstate argues that Bunker's claim fails here because the act of mailing a policy to Nadeau is not sufficiently related to Bunker's injury.

This argument ignores the practical effect of the policy's nationwide coverage clause.  Form LS-5 expressly provides added coverage for accidents occurring anywhere in the United States.

Bunker's claim is rooted in this clause and based on an injury that occurred in Nadeau's rental property in New Hampshire.  A significant nexus therefore exists between the policy and Bunker's claim, which independently satisfies the relatedness requirement.

**B.    Purposeful Availment**

The purposeful availment inquiry is necessary to ensure that the assertion of personal jurisdiction over a defendant is "not based on merely 'random, isolated, or fortuitous' contacts with the forum state." Adelson, 510 F.3d at 50 (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995)).  The inquiry focuses on voluntariness and foreseeability, and it ignores a plaintiff's unilateral acts within the forum state. Sawtelle, 70 F.3d at 1391-93.  Midstate argues that it did not purposely avail itself of this forum because the inclusion of a nationwide coverage provision in the policy is insufficient in this case for it to "reasonably anticipate being haled into court" in New Hampshire.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  I disagree.

Midstate's decision to include a nationwide coverage provision was unquestionably voluntary.[2]  Promising to provide

---

[2] Midstate argues in other briefs that the nationwide coverage clause was a mutual mistake between the parties and the policy

coverage anywhere in the United States made it reasonably
foreseeable that Midstate could be haled into any state's courts
where a covered injury occurred.  This reasoning is in line with
the majority view regarding specific jurisdiction and nationwide
coverage clauses.  See TH Agric. & Nutrition, LLC v. Ace
European Grp. Ltd., 488 F.3d 1282, 1290 (10th Cir. 2007) ("When
an insurer includes a broad territory-of-coverage clause in an
insurance policy, the foreseeability of litigation in foreign
states is based on the insurer's own actions"); accord McGow v.
McCurry, 412 F.3d 1207, 1214-15 (11th Cir. 2005); Ferrell v. W.
Bend Mut. Ins. Co., 393 F.3d 786, 791 (8th Cir. 2005); Payne v.
Motorists' Mut. Ins. Co., 4 F.3d 452, 456 (6th Cir. 1993);
Farmer's Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907
F.2d 911, 913 (9th Cir. 1990); Rossman v. State Farm Mut. Auto.
Ins. Co., 832 F.2d 282, 286 (4th Cir. 1987).  The inclusion of a
nationwide coverage clause in a policy amounts to an affirmative
choice by an insurer to avail itself of the privilege of
conducting business in a forum state.  See TH Agric., 488 F.3d
at 1290.  Such provisions are attractive to prospective
purchasers and "induce customers to buy [an insurer's] policies

---

must accordingly be reformed to only cover the three New York
rental properties.  I need not discuss this argument here
because Midstate does not rely upon it for jurisdictional
purposes.

and to pay higher premiums for them." Rossman, 832 F.2d at 287. Any benefit accruing to Midstate by its inclusion of such a provision, then, could hardly be characterized as fortuitous or incidental. See id. (citing World-Wide Volkswagen, 444 U.S at 298-99).

Midstate asks me to adopt the minority view, which holds that a nationwide coverage clause cannot be independently sufficient to demonstrate purposeful availment. See Batton v. Tenn. Farmers Mut. Ins. Co., 153 Ariz. 268, 272 (1987). In Batton, the court relied on the Supreme Court's decision in World-Wide Volkswagen and analogized the issuance of an insurance policy with a nationwide coverage clause by an insurer to the sale of a car by Volkswagen to a customer who is free to drive the car anywhere in the United States. See Batton, 153 Ariz. at 272 (citing World-Wide Volkswagen, 444 U.S at 299 (holding that injuries that occurred in an otherwise unrelated forum state were rooted in the plaintiff's unilateral activities)). But an insurer's inclusion of a nationwide coverage clause is precisely the type of voluntary act that distinguishes the present case from World-Wide Volkswagen because it expressly obligates the insurer to defend its insured in the courts of any jurisdiction in which it has been sued for a covered claim. See, e.g., Rossman, 832 F.2d at 286 (a

9

nationwide coverage clause renders the expectation of being
haled into court in any given forum "an express feature of its
policy."). Accordingly, the Batton court's reasoning is simply
not persuasive.

Midstate also argues against jurisdiction because New
Hampshire, unlike states subscribing to the majority view, is
not a "direct action" state, meaning that it does not provide
injured parties with a cause of action against an insurance
company until the insured's liability is established in an
earlier judicial proceeding. Although it is true that an
insurer may not be sued directly in New Hampshire for the
liability of its insured, it may be subject to suit by an
injured party after liability has been established if the
insured is unable or unwilling to satisfy a judgment that is
entered against it. See Burke v. Fireman's Fund Ins. Co., 120
N.H. 365, 366-67 (N.H. 1980). Midstate provides no sound reason
why this difference is material. None of the aforementioned
cases subscribing to the majority view were based upon the
availability of a direct action against an insurer. Instead,
many involved declaratory judgment actions such as the one at
issue here. Even more fundamentally, its assertion that the
majority rule applies only in direct action states is
inaccurate. Farmer's Insurance followed the majority view in

applying Montana law, which is the same as New Hampshire's on this point.  See 907 F.2d at 913; see also Ulrigg v. Jones, 274 Mont. 215, 224-25 (1995) ("[T]he long-established rule in Montana [is] that a direct action against an insurer does not lie until the liability of the insured has been established").

Had Midstate wished to avoid suit in New Hampshire, "it could have excluded that state from the 'policy territory' defined in the policy." See Rossman, 832 F.2d at 287.  It did not, and thus purposefully availed itself of this forum.

**C.   Reasonableness**

Even when the relatedness and purposeful availment inquiries are satisfied, a court may only exercise specific jurisdiction over a defendant if it is reasonable to do so. Adelson, 510 F.3d at 51.  Although it is rarely unreasonable to assert jurisdiction when the first two factors are met, Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 66 (1st Cir. 2002), at least one circuit has found jurisdiction to be unreasonable even though a worldwide coverage clause was otherwise sufficient to establish minimum contacts with the forum state.  TH Agric., 488 F.3d at 1292-97 (declining to assert jurisdiction over an international insurer in Kansas in a suit involving a worldwide coverage clause).  Midstate presents no persuasive arguments as

11

to why the assertion of jurisdiction would be unreasonable here given the undisputed facts that the injury occurred here, both the plaintiff and the insured reside here, and Midstate mailed the policy to the insured at his New Hampshire address. Accordingly, I reject Midstate's argument and determine that it is reasonable to exercise this court's jurisdiction over Midstate in this matter.

## IV.   CONCLUSION

Bunker has sufficiently alleged that the court has personal jurisdiction over Midstate.[3]  I therefore deny Midstate's motions to dismiss (Doc. Nos. 2, 15) to the extent that they are based on a claimed lack of personal jurisdiction.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 7, 2014

cc:  Thomas E. Craig, Esq.
     James E. Fiest, Esq.
     Adam R. Mordecai, Esq.
     Doreen F. Connor, Esq.
     Kevin G. Collimore, Esq.

---

[3] I emphasize that I only answer the limited jurisdictional issue here.  I may come to a different conclusion on the merits.

12